Billy Ray Merritt, Jr., and his wife, Joy Merritt, appeal from a judgment for the defendant, Cynthia Simonson, entered on a jury verdict.[1] The Merritts alleged that Simonson had negligently or wantonly operated an automobile so as to cause it to strike the rear of Billy Ray Merritt's automobile. Billy Ray Merritt claimed damages for pain and suffering and for lost wages. Joy Merritt claimed damages for loss of consortium and for emotional and mental distress and anguish. The issue stated by the Merritts is whether the trial court erred in giving a "sudden emergency" charge to the jury.
On the day of the accident, Billy Ray Merritt (Merritt) was traveling north alone on Chalkville Road in Trussville, Alabama, in his 1990 Nissan pickup truck. The road was damp from a recent rain storm. The car in front of him stopped to turn left at an intersection. Merritt testified that he slowed to a gradual stop and put on his left-turn signal, although he was not turning left. Simonson was traveling north on Chalkville Road behind Merritt. Simonson's car collided with the rear end of Merritt's truck, pushing it into the car in front of his truck. Two of Simonson's cousins were also in the car with her. None of the occupants of her car was injured. Merritt stated at the scene that he was not hurt, but later that evening he saw a physician for neck pain.
Simonson testified that it was not raining at the time of the accident and that the road was straight and level before the portion of the road where the accident occurred. She testified that when she was a block away she could see the intersection where the accident occurred. She testified that no cars were between her car and Merritt's truck. However, she testified that she did not see Merritt's truck in front of her until she was approximately two car lengths away from it. She stated that when she pressed on the brake pedal the brakes "locked" and the car began to slide. She testified that she attempted to turn the car toward the left, but was faced with oncoming traffic. She stated that she then tried to maneuver her car back toward the right but was unable to avoid colliding with the truck.
At the close of all the evidence, the trial judge gave the jury the following charge, apparently based on instruction 28.15, Alabama Pattern Jury Instructions: Civil:
 "It's also the law in this state, Ladies and Gentlemen, that if a person, without fault of their own, is faced with a sudden emergency, then they are not to be held to the same correctness of judgment and action as if they had time and opportunity to fully consider the situation. And the fact, if it be a fact, that they do not choose the best or safest way of escaping peril or preventing injury is not necessarily negligence. But the standard of care required in an emergency situation is that care which a reasonably prudent person would have exercised under the same or similar circumstances."
The plaintiffs argue that the circuit court erred in giving this "sudden emergency" charge to the jury, because they contend the defendant produced no evidence that she was faced with a sudden emergency. The defendant contends, however, that the plaintiffs have no right to object to the giving of the charge, because, she argues, the plaintiffs' attorney introduced this theory to the jury during his examination of the defendant.
The plaintiffs called Simonson as an adverse witness, and the following occurred during redirect examination of Simonson by the plaintiffs' attorney:
 "Q. Cindy, when you say the brakes locked on the car, you are not telling the jury that something was wrong with the brakes?
"A. No, sir.
 "Q. I mean, you slammed on the brakes in an emergency and they locked and you slid? *Page 430 
 "A. I think — Well, I pressed on them and they locked.
 "Q. Well, you pressed as hard as you could, didn't you?
"A. They didn't go to the floor.
 "Q. They did not go to the floor. Well, I know, but I am saying you pressed on those brakes, what we call an emergency, and you hit them as hard as you could?
"A. Yes, sir."
The defendant argues that these questions by the plaintiffs' attorney invited the error, if any, in the giving of the sudden emergency charge, and that the plaintiffs can not now avail themselves of that alleged error. However, the plaintiffs' attorney never mentioned the term "sudden emergency." It is true that the plaintiffs' attorney said the word "emergency," but this does not indicate that immediately before the collision Simonson was facing a "sudden emergency" not caused by her own actions. The only plausible defenses available for the defendant were the argument that she was entitled to the sudden emergency charge or the argument that no injury resulted from the accident, because she presented no evidence that Merritt had acted negligently. Although it is true that neither Simonson nor her counsel had mentioned the term "sudden emergency" or the word "emergency" before the plaintiffs' attorney used the word "emergency," Simonson had previously testified on direct examination that she had first seen Merritt's truck when she was only two car lengths away and that she was unable to avoid the accident. These statements by Simonson sufficiently indicate that she was attempting to use the sudden emergency doctrine as a defense. Thus, the mere use of the word "emergency" by the plaintiffs' attorney cannot be seen as introducing into the case the question of sudden emergency and thereby precluding an objection to a charge on that defense.
We now turn to the issue of whether the circuit court erred in giving a sudden emergency charge. We first note:
 "[A]ppellate courts frequently instruct that the better practice is ordinarily not to give a sudden emergency instruction, because . . . it is all too frequently misapplied on the facts . . . and the risk of prejudicial error in instructing the jury on the sudden emergency doctrine exceeds by far the possibility of error in not doing so. Indeed, some courts state that it would be a rare situation where it would be error to fail to give a sudden emergency instruction because the usual instruction on negligence sufficiently covers what a reasonably prudent person would do under all the circumstances, including those of a sudden emergency."[2]
57A Am.Jur.2d Negligence § 229 (1989). After having reviewed the evidence, we find the case of Friedlander v. Hall,514 So.2d 914 (Ala. 1987), dispositive of the issue of whether the doctrine should have been applied in this case. The facts ofFriedlander are very similar to the facts of this case. InFriedlander, the plaintiff, Amelia Friedlander, was in almost the same position that Merritt was. Friedlander's car was the middle car in a three-car collision, which occurred after the lead car stopped to turn left. Id. at 915. Friedlander was able to bring her car to a complete stop behind the lead car before her car was struck by the car driven by the defendant, Mary Alyce Hall. Id. Hall's car had been separated from Friedlander's by one other car, which turned off the road to the right immediately before the accident. Id. When that car exited, Hall was approximately 50 feet away from Friedlander's stopped car. Id. Hall testified that that was the first time she saw Friedlander's car. Id. Hall stated that she was going too fast to take evasive action or to stop and avoid the accident.[3] Id. This Court used the following two-part test:
 "In order for the sudden emergency doctrine to be applicable, there must be 1) a sudden emergency; and 2) the sudden emergency must not be the fault of the one seeking to invoke the [doctrine]. McKinney *Page 431 v. Alabama Power Co., 414 So.2d 938 (Ala. 1982)."
Id. This Court, applying that test, noted that there was no evidence that the driver in front of Hall turned right suddenly or that Friedlander came to a sudden stop in front of Hall. This Court stated that a motorist "is required to have his vehicle under control so that he does not drive into the rear of a vehicle whose driver has properly and lawfully stopped his vehicle." Id. at 916. The opinion continued: "[T]here was no unusual or sudden occurrence that a driver on a crowded municipal street should not anticipate or expect in the ordinary course of congested urban travel. Consequently, we are of the opinion that the jury was erroneously instructed on the sudden emergency doctrine." Id.
Comparing the facts of the present case to the facts ofFriedlander, we note that Simonson was also traveling on a city street, that she testified that Merritt did not suddenly stop in the road in front of her, and that she testified that there was no other car between her car and Merritt's car to obstruct her vision (Hall had alleged in Friedlander that the car that turned right had obstructed her vision). Simonson also testified that she was not claiming that the brakes on her car had malfunctioned, and she presented no evidence of a possible malfunction that could have caused the brakes to operate unsafely.
We can find no evidence that the emergency Simonson relies on was not of her own making. A driver's "lack of attentiveness . . . to traffic does not constitute a sudden emergency within the sudden emergency doctrine, because under that doctrine the emergency must not be the fault of the one seeking to invoke the [doctrine]." Jones v. Lyons, 540 So.2d 729, 731 (Ala. 1989). Simonson cannot claim the benefit of the sudden emergency doctrine when it appears that her own lack of attention caused the emergency. The overwhelming tenor of the evidence is that if Simonson had been paying attention to the vehicles in front of her, she would not have been faced with the emergency situation that required her evasive action.
This Court acknowledges the presumption that jury verdicts are correct and the rule that that presumption is strengthened when the trial court denies a motion for a new trial.Guthrie v. McCauley, 376 So.2d 1373 (Ala. 1979). However, this Court has held more than once that a motorist "is required to have his vehicle under control so that he does not drive into the rear of a vehicle whose driver has properly and lawfully stopped his vehicle while waiting on traffic to clear." Jones, 540 So.2d at 731; see also Friedlander v. Hall, 514 So.2d at 916 (citing Glanton v. Huff, 404 So.2d 11 (Ala. 1981)). This Court has also held that the giving of a sudden emergency charge when the uncontroverted evidence indicated that any such emergency was due to the defendant's own actions is prejudicial error. Jones, 540 So.2d at 731; Friedlander, 514 So.2d at 915.
Simonson also argues that the plaintiffs did not prove any compensable damage or loss or harm arising from the accident. However, they presented the deposition testimony of an orthopedic surgeon who had been treating Merritt for chronic cervical strain for two years after the accident. The surgeon testified that Merritt had suffered mild degeneration of the cervical discs and had experienced pain and swelling around his neck and in his lower back for at least a year and a half after the accident, and that such pain and swelling would probably recur. The surgeon also testified that Merritt was ten percent physically impaired as a result of his accident. There is no evidence in the record that Merritt has lost any wages because of his injury. There was also testimony from Merritt's wife that Merritt had become moody and irritable after the accident and that she had had to change her lifestyle to adjust to his disability. We conclude that the plaintiffs did present evidence of loss or harm — for example, evidence that Merritt experienced pain and suffering and that his wife experienced a loss of consortium — and that that evidence was sufficient to raise a question for the jury. See McKinney v. Alabama PowerCo., 414 So.2d 938, 939 (Ala. 1982).
Under the circumstances of this case, the circuit court committed reversible error in *Page 432 
instructing the jury on the sudden emergency doctrine.
The judgment is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur.
[1] Cynthia Simonson's father was also a defendant originally; he was dismissed from the action and is not involved in this appeal.
[2] Our research has not revealed a case where this Court has reversed a judgment because of a trial court's refusal to give a "sudden emergency" charge or instruction.
[3] The evidence indicated that Hall was not traveling above the speed limit, however; she had testified that she was traveling 30 miles per hour in a 40-mile-per-hour zone.